Filed 9/12/22 In re K.A. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | C095721 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, Plaintiff and Respondent, v. A.H., Defendant and Appellant. | (Super. Ct. No. 53005069) |

A.H., mother of the minor K.A., appeals from the juvenile court's order terminating her parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 385.)[1] Citing *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*), mother

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

argues the court erroneously considered (1) her current ability to provide for the minor's care and (2) her progress with her case plan when it found the beneficial parental relationship exception did not apply. (§ 366.26, subd. (c)(1)(B)(i).)

Because the record does not disclose that the juvenile court's decision complies with the Supreme Court's directions in *Caden C.*, we will reverse the order terminating parental rights and remand for reconsideration consistent with the principles articulated in *Caden C.*

## FACTUAL AND PROCEDURAL BACKGROUND

We provide a limited recitation of the factual and procedural background.

In May 2020, the Placer County Department of Health and Human Services (Department) filed a section 300 petition on behalf of the then three-year-old minor, alleging mother was abusing methamphetamine and was unable to appropriately care for the minor. Father was incarcerated at the time.[2] Mother entered a month-long inpatient treatment program in March 2020, and the minor moved in with maternal grandmother. The minor did well with maternal grandmother and was "very happy." Mother resumed abusing methamphetamine and marijuana in April 2020. In May 2020, the juvenile court detained the minor, placed him in maternal grandmother's care, and ordered services and supervised visits twice per week for mother.

Over the next six months, mother again tested positive for methamphetamine and she returned to inpatient treatment. Although father had been released from prison, he declined to engage with the Department. The minor continued to do well living with maternal grandmother.

---

[2] Father is not a party to this appeal.

During the January 2021 six-month review hearing, the court found mother was making "adequate progress" and continued all prior orders, including mother's reunification services and twice weekly supervised visits.

Over the next six months, the minor continued to do well living with maternal grandmother, who was willing to adopt him. The minor's new baby sister (born in March 2021 and not at issue in this appeal) had now also been placed with maternal grandmother, and the minor enjoyed being with her. Mother resumed abusing illicit substances in May 2021, and she acknowledged it would be unsafe to return the minor to her at this point. Still, mother was visiting with the minor regularly, and it was "clear how much she loves her children."

During the July 2021 contested 12-month review hearing, the juvenile court found that mother's progress had been minimal. Although she had participated at times, she also disengaged for "lengthy periods." Because there was not a substantial probability that the minor could be safely returned to mother within the reunification period, the court terminated reunification services and set a section 366.26 hearing. In addition, the court reduced mother's supervised visitation to twice monthly.

Over the next six months, the minor continued to do well living with maternal grandmother. She had cared for the minor prior to the current placement and the two shared a strong bond. The social worker opined that adoption was the best plan for the minor, given his need for security and permanency. The social worker also noted that mother had only attended two visits with the minor between the July 2021 hearing and September 2021,[3] with multiple visits cancelled due to illness. During the only visit in August 2021, the minor said he did not want to leave at the end, and the two exchanged

_____

[3] The report did not include information about visits in October or November 2021.

hugs and kisses. During the only visit in September 2021, mother's interactions with the minor were "positive."

During the December 2021 section 366.26 contested hearing, mother testified she preferred guardianship over adoption because it was better for the minor to have his mother. She acknowledged she had stopped drug testing with the Department. Still, she cared for the minor and wanted to remain involved in his life. Despite a written agreement for ongoing contact, mother feared adoption would mean less contact with the minor.

The juvenile court explained its role at this point in the proceedings was to consider what was in the minor's best interest, noting that "children have the right to permanency and don't have to sit by and wait for their parents to get their lives more in order in a safe place so they can have custody, sadly." After finding that the minor was adoptable, the court turned to the beneficial parental relationship exception to adoption. The court found that there was "no evidence" that the relationship between mother and the minor was such that terminating parental rights would be contrary to the minor's well-being. The court noted that mother had kept contact with the minor and loved him, although she was "not always consistent."

According to the juvenile court, the issue was "whether or not currently [mother] has the ability to provide for [the minor's] care, and the answer to that is clearly no." Although mother at times was present and appropriate, her life was not currently in a "good place." The court noted mother had admitted during testimony that she was unable to care for the minor. In addition, mother had not completed her reunification services or even made significant progress with them. The court also noted that the minor had spent most of his childhood in the care of maternal grandmother.

In reaching its decision, the juvenile court considered the Department's report, the report from an unspecified half sibling, the psychological evaluation, and the court appointed special advocate report. The court terminated parental rights and freed the

4

minor for adoption, with maternal grandmother as the prospective adoptive parent. The court ordered visitation per the written agreement (prescheduled, two-hour weekend visits for mother, plus longer visits during the holidays).

Mother timely appealed. The case was fully briefed on July 28, 2022, and assigned to this panel that same month.

## DISCUSSION

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citation.] If the court finds the child is adoptable, it must terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when the parents have maintained regular visitation and contact with the child, the child would benefit from continuing the relationship, and termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; *Caden C., supra*, 11 Cal.5th at pp. 639-640.)

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) The parent must also prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) "In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing

5

the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, at p. 575.) On the other hand, when the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent/child relationship, the court should order adoption. (*Caden C., supra*, 11 Cal.5th at pp. 633-634; *Autumn H.*, at p. 575.)

The beneficial parental relationship exception to adoption is an exception to the general rule that the court must choose adoption where possible, and it " 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) It "must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H., supra*, 27 Cal.App.4th at p. 576.) The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.) The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*Caden C., supra*, 11 Cal.5th at pp. 639-640; *In re K.P.* (2012) 203 Cal.App.4th 614, 622.) We do not substitute our judgment for that of the court as to what is in the child's best interests. (*Caden C.*, at p. 641.)

Here, in finding that the beneficial parental relationship exception did not apply, the juvenile court appropriately considered the age of the minor, the proportional amount of time he had spent in the care of maternal grandmother, and his relationship with his parental figures. However, the court also considered, at least to some extent, mother's

6

failure to complete her case plan and her struggle with the circumstances that gave rise to the dependency.

During the hearing, the juvenile court described the issue as "whether or not currently [mother] has the ability to provide for [the minor's] care, and the answer to that is clearly no." The court explained that mother's life was not currently in a "good place," and she had admitted that she was unable to care for the minor. Finally, just before reaching its decision, the court noted that mother had not completed her reunification services or even made significant progress with them. These are not appropriate considerations when determining application of the exception at issue here.

As *Caden C.* explains, a parent's continued struggle with the issues leading to dependency are not a categorical bar to applying the beneficial parental relationship exception. (*Caden C., supra*, 11 Cal.5th at p. 637.) That would "effectively write the exception out of the statute." (*Ibid.*) A section 366.26 hearing "all but presupposes that the parent has not been successful in maintaining the reunification plan meant to address the problems leading to dependency." (*Caden C.*, at p. 637.) "Parents need not show that they are 'actively involved in maintaining their sobriety or complying substantially with their case plan' [citation] to establish the exception." (*Ibid.*)

Still, the issues that led to the dependency may be relevant to the application of the exception, such as where there is a negative effect on the child. (*Caden C., supra*, 11 Cal.5th at p. 637.) But they are relevant only to the extent they inform whether the child would benefit from continuing the parental relationship and be harmed by losing it. (*Id.* at p. 638.) Whether a parent is ready for a return of custody is not by itself relevant. (*Ibid.*)

*Caden C.* was filed in May 2021, over six months before the court held the section 366.26 hearing here. We will reverse the orders and remand the matter with directions to the juvenile court to hold a new hearing and subsequently make findings consistent with the guidance in *Caden C.* and the current circumstances of this case.

7

## DISPOSITION

The orders terminating parental rights are reversed.  The matter is remanded for the juvenile court to conduct a new section 366.26 hearing and consider the beneficial parental relationship exception to adoption, in a manner consistent with *Caden C.* and this opinion; taking into consideration the family's current circumstances, and any developments in the dependency proceeding that may have occurred during the pendency of this appeal.



　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　Duarte, Acting P. J.


We concur:



　　　　/s/
Hoch, J.



　　　　/s/
Renner, J.